IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
**HONORABLE A. BRUCE CAMPBELL**

| | |
|---|---|
| In re: ) | |
| STEVE BOYD KURTZ ) | Case No. 11-35725 ABC |
| SSN:   XXX-XX-8834 ) | Chapter 13 |
| Debtor. ) | |

ORDER DENYING MOTION TO RECONSIDER

    Debtor moves this Court to reconsider its Order Denying Motion to Modify Confirmed Chapter 13 Plan entered on August 9, 2013 at Docket #65 ("Order").  The Chapter 13 Trustee, Douglas B. Kiel, ("Trustee") filed a Memorandum in Support of Debtor's Motion to Reconsider ("Memorandum").

    In his underlying motion to modify his confirmed plan, Debtor sought to modify his confirmed plan to surrender his residence to the holder of the first mortgage.  Debtor also proposed to discharge any deficiency which might arise after the property was sold by the lender.  Because Debtor had elected to keep his home, and because the first mortgage holder was the beneficiary of section 1322(b)(2) of the Bankruptcy Code, the home mortgage lender's rights could not be modified except to the limited extent authorized by section 1322(b)(5).[1]  Debtor's confirmed plan provided for curing the default in his monthly mortgage payments and maintaining his regular payments to that lender.

    The issue presented to this Court by the Debtor's proposed modified plan and again by Debtor's Motion to Reconsider ("Motion") and the Trustee's Memorandum is whether a debtor, who has elected to retain his home in his confirmed plan, can surrender his residence postconfirmation to the holder of the first mortgage and discharge any deficiency which results after the surrender and sale of the property.  The Order of which Debtor seeks reconsideration denied Debtor's motion to modify his confirmed Chapter 13 plan, holding that Debtor is bound by the provisions of his confirmed plan by section 1327(a) of the Code [2] and that section 1329 of the Code does not permit

---

[1] 11 U.S.C. §1322(b)(2) permits debtors to modify the rights of holders of secured claims, "other than a claim secured only by a security interest in the real property that is the debtor's principal residence. . . . "  11 U.S.C. §1322(b)(5) permits a debtor to modify the rights of the mortgage holder on his principal residence only by curing any arrearage and maintaining his regular monthly mortgage payments.

[2] Section 1327 of the Code is titled "Effect of confirmation." Section 1327 states:

    The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

the modifications which Debtor proposed.³ The Order did not include an extensive analysis but, instead, relied upon and cited this Court's earlier decision in *In re Knapp*, No. 08-24134 ABC (Bankr.D.Colo. July 5, 2013).

Debtor and the Trustee argue in favor of the postconfirmation plan modifications which Debtor proposed and advocate for a more liberal construction of section 1329 of the Code. In addition to the arguments which this Court has previously considered and rejected, see *In re Rutt*, No. 07-13448 ABC (Bankr.D.Colo. September 10, 2013), and those which this Court addresses below in this opinion, Debtor and the Trustee contend that Debtor's fresh start will be impaired. They maintain that if Debtor cannot surrender his residence and discharge any deficiency, he may be required to file another bankruptcy case resulting in unnecessary costs and delay in obtaining a discharge, including discharge of any deficiency on his home mortgage lender's loan.

The foundation for this Court's legal conclusions in this case, and in the *Knapp* and *Rutt* cases, is the opinion of the Sixth Circuit Court of Appeals,⁴ which recognizes the finality accorded to the confirmed plan by section 1327 of the Code and reads section 1329 narrowly. *In re Nolan*, 232 F.3d 528 (6th Cir. 2000). A summary of the facts and the Sixth Circuit's sound reasoning in *Nolan* bears repeating.

In *Nolan*, the debtor sought to surrender a vehicle, the value of which had been determined under section 506 at the time of confirmation of the debtor's plan. Debtor's confirmed plan had bifurcated the creditor's claim into secured and unsecured portions based upon the value of the vehicle at the time of confirmation. The debtor proposed to modify that confirmed plan and to redetermine the amounts of the secured and unsecured portions of the secured creditor's claim based upon the depreciated value of the vehicle at the time of the postconfirmation surrender.

---

³Section 1329 of the Code governs postconfirmation modifications of confirmed chapter 13 plans. Section 1329(a) provides in pertinent part:

> At any time after confirmation of the plan but before completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to--
> > (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
> > (2) extend or reduce the time for such payments;
> > (3) alter the amount of distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or
> > (4) . . . .

⁴The Tenth Circuit Court of Appeals has not spoken on the issue before the Court.

*Nolan* holds:

> that a debtor cannot modify a plan under section 1329(a) by: 1) surrendering the collateral to a creditor; 2) having the creditor sell the collateral and apply the proceeds toward the claim; and 3) having any deficiency classified as an unsecured claim. (citation omitted). Section 1329(a) only permits modification of the *amount* and *timing* of *payments*, not the total *amount* of the *claim*.

***In re Nolan***, 232 F.3d at 535 (alteration in original). Pivotal to the Sixth Circuit's conclusion that section 1329 should be narrowly construed is the use of the phrase in section 1329(a)(1), "increase or reduce the amount of ***payments on claims*** of a particular class provided for by the plan." (emphasis added).

The debtor in ***Nolan*** had argued that the modifications she proposed fit squarely within sections 1329(a)(1) to (3). She urged that a surrender of collateral effects a reduction in the amount of payments, shortens the time for payments, and alters the distribution to the creditor by crediting the creditor's claim with the amount the creditor receives after surrender upon the liquidation of the collateral. The ***Nolan*** court rejected the debtor's arguments as follows:

> First, section 1329(a) does not expressly allow the debtor to alter, reduce or reclassify a previously allowed secured claim. (citation omitted). Instead, section 1329(a)(1) only affords the debtor a right to request alteration of the amount or timing of specific payments . . . .
> Second, the proposed modification would violate section 1325(a)(5)(B), which mandates that a secured claim is fixed in amount and status and must be paid in full once it has been allowed. (citation omitted).
> Third, (the) proposed modification would contravene section 1327(a), because a contrary interpretation postulates an unlikely congressional intent to give debtors the option to shift the burden of depreciation to a secured creditor by reclassifying the claim and surrendering the collateral when the debtor no longer has any use for the devalued asset. (citation omitted) . . . .
> . . . .
> Fourth, only the debtor, the trustee, and holders of unsecured claims are permitted to bring a motion to modify a plan pursuant to section 1329(a). The ***Jock***[5] interpretation would create an inequitable situation where the secured creditor could not seek to reclassify its claim in the event that collateral *appreciated*, even though the debtor could revalue or reclassify the claim whenever the collateral *depreciated*. (citation omitted) . . . .
> Fifth, ***Jock's*** interpretation is at odds with the plain language of section 1329. "This section does not state that the plan may be modified to increase or reduce the amount of *claims*. This is of significance in relation to secured claims." (citation omitted). ***Jock*** fails to note that the terms "claim" and "payment" have two different meanings in the Bankruptcy Code.
> . . . .
> . . . Read with the benefit of proper term definitions, section 1329 clearly indicates that modifications after plan confirmation cannot alter a *claim* (a right to a remedy or payment of a certain

---

[5]***In re Jock,*** 95 B.R. 75 (Bankr.M.D. Tenn. 1989). ***Jock*** is among the lower court cases which read section 1329(a) to permit debtors to modify their confirmed plans to surrender collateral to their secured creditors and then treat the new, greater deficiency as an unsecured claim in the modified plan. See the cases cited in Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Ed. §264.1, at n.22, Sec.Rev. July 14, 2004, www.Ch13online.com.

total amount), but can extend or compress payments and reduce or increase the *amount* of the delivery of value planned as an eventual satisfaction for the creditor's claim.

***In re Nolan***, 232 F.3d at 532-535(6th Cir. 2000) (alteration in original).

The facts in ***Nolan*** are different than those in the case before this Court. This case involves the Debtor's proposal to surrender his principal residence to the first mortgage holder. The collateral is not a car, and this case does not involve the effort to surrender collateral to the secured creditor whom debtor had crammed down in his confirmed plan. Unlike ***Nolan***, this case did not involve the valuing of collateral under section 506 of the Code, and a resulting determination of the amount of an "allowed secured claim."[6]  Accordingly, at confirmation, the court did not need to evaluate the Debtor's plan and its treatment of the mortgage holder to see if the confirmation standards of section 1325(a)(5)[7] had been met.

---

[6]The Bankruptcy Code does not define "allowed secured claim."  Section 506(a) provides the means for determining the extent to which an "allowed claim" is a secured claim.  Section 506(a)(1) reads:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

Section 502(a) of the Code deems allowed "[a] claim or interest, ***proof of which is filed under section 501 of this title***, . . . . unless a party in interest . . . objects. (emphasis added).

[7]Section 1325(a)(5) provides that  the court shall confirm a plan if–
. . . .
(5) with respect to each allowed secured claim provided for by the plan-
    (A) the holder of such claim has accepted the plan;
    (B)(i) the plan provides that —
        (I) the holder of such claim retain the lien securing such claim
        until the earlier of –
            (aa) the payment of the underlying debt
            determined under applicable nonbankruptcy
            law; or
            (bb) discharge under section 1328; and
        (II) if the case under this chapter is dismissed or converted
        without completion of the plan, such lien shall also be retained by
        such holder to the extent recognized by applicable nonbankruptcy
        law; and
    (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
    (iii) if–
        (I) property to be distributed pursuant to this subsection is in the
        form of periodic payments, such payments shall be in equal

Regardless, *Nolan's* reasoning and conclusion are instructive and guide this Court in its effort to reconcile the finality accorded to the confirmed plan by section 1327 of the Code and the modifications to that plan permitted by section 1329 of the Code. If, as *Nolan* concludes, section 1329(a)(1) prevents a re-bifurcation of the *amount* of a secured *claim*, a claim, the amount of which had been determined under section 506(a) at the time of confirmation, surely, section 1329(a)(1) cannot be interpreted so as to permit a debtor to modify the *rights* of a first mortgage holder whose rights debtor was prohibited from modifying at confirmation by section 1322(b)(2).[8]

Even assuming that a postconfirmation modification of the rights of the first mortgage holder secured by debtor's residence fits in some way into the language of section 1329(a)(1), section 1329(b) requires the court to find that sections 1322(b)(2) and (5) have been complied with.[9] If a debtor proposes a modified plan which does not meet those mandates, the court cannot approve it. Once a debtor elects at the time of confirmation to retain the real property which is his residence,

---

monthly amounts; and
(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
(C) the debtor surrenders the property securing such claim to such holder; . . . .

[8]In *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, (1993), the Supreme Court highlighted Congress' focus on "rights" in section 1322(b)(2):

> That provision does not state that a plan may modify "claims" or that the plan may not modify "a claim secured only by" a home mortgage. Rather it focuses on the modification of the "*rights of holders*" of such claims. . . .
>
> The term "rights" is nowhere defined in the Bankruptcy Code. In the absence of controlling federal rule, we generally assume that Congress has "left the determination of property rights in the assets of a bankrupt's estate to state law," since such "[p]roperty interests are created and defined by state law." (citations omitted). Moreover, we specifically recognized that "[t]he justifications for application of state law are not limited to ownership interests," but "apply with equal force to security interests, including the interest of a mortgagee." (citation omitted). The bank's "rights," therefore, are reflected in the relevant mortgage instruments, which are enforceable under (state) law. They include the right to repayment of the principal in monthly installments over a fixed term at specified adjustable rates of interest, the right to retain the lien until the debt is paid off, the right to accelerate the loan upon default and to proceed against petitioners' residence by foreclosure and public sale, and the right to bring an action to recover any deficiency remaining after foreclosure. . . . These are the rights that were "bargained for by the mortgagor and mortgagee," (citation omitted), and are rights protected from modification by §1322(b)(2).

*Nobelman v. American Savings Bank*, 508 U.S. at 328-330, 113 S.Ct. at 2109-2110.

[9]Unless a proposed modification falls within those permitted by section 1329(a), "section 1329(b) does not come into play." *In re Nolan*, 232 F.3d at 535 n.13.

Congress prohibits that debtor from modifying that creditor's rights, except to the limited extent permitted by section 1322(b)(5). Debtor is bound by that election. A subsequent postconfirmation proposal to bifurcate that claim into secured and unsecured portions, and to discharge any deficiency would violate the mandate of section 1322(b)(2).

Further bolstering this Court's analysis and compelling its conclusion is that Congress expressly excepts from any discharge under section 1328(a) or (b), debts provided for under section 1322(b)(5)--debts, secured or unsecured, payments on which extend beyond the life of the plan.[10] The Debtor's effort here to surrender and discharge any deficiency would contravene those provisions, and the Court is statutorily prohibited from approving such a modification by sections 1329(b)(1) and 1325(a)(1).[11]

The Debtor and Trustee cite cases and treatises which permit a debtor to surrender depreciated collateral, recalculate the amount of the allowed secured claim, and discharge the new deficiency balance postconfirmation. Those courts and authorities so conclude by observing that Congress, by section 1329(b), made sections 1322(a), 1322(b), (particularly, 1322(b)(8)),[12] 1323(c) and 1325(a) applicable to the court's review of postconfirmation modifications. "Examining these provisions shows that the statute permits post-confirmation modification allowing surrender of collateral in satisfaction of a secured claim." **Bank One, N.A. v. Leuellen**, 322 B.R. 648, 652-253 (S.D. Ind. 2005). *See also*, Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Ed. §264.1, at ¶4-6, Sec.Rev. July 14, 2004, *www.Ch13online.com*. The **Lundin** treatise argues that, postconfirmation plan modification involving surrender of collateral and re-casting any deficiency into the plan's unsecured creditor class, is justified under Chapter 13 because "there is no statutory reason why section 506(a) would not have its normal application at modification of a plan under section 1329." *Id*. at ¶10.

The **Jock** line of cases and **Lundin** interpretations of section 1329, however, render section 1327 meaningless. If a debtor can modify the claims of his secured creditors whenever the value of the creditor's collateral depreciates, then that debtor has not been bound by his confirmed plan. Moreover, in the context of the debtor's effort to surrender a vehicle as in **Nolan,** those authorities'

---

[10]Section 1322(b)(5) permits a plan to "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending *on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due*." (emphasis added).

[11] Section 1325(a)(1) is among the Code provisions made applicable to the court's review of plan modifications by section 1329(b). To be confirmed, a plan must comply "with the provisions of this chapter and with the other applicable provisions of this title." See section 1325(a)(1).

[12]Section 1322(b)(8) authorizes a debtor in a plan "to provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor."

interpretations of section 1329 ignore the language of section 1325(a) that ties the value of property to be distributed on account of the allowed secured claim to "***the effective date of the plan***."[13]

In the context of the postconfirmation surrender of a principal residence, as the Debtor proposes in this case, where the Debtor had elected at confirmation to retain his residence, sections 1322(b)(2) and (b)(5) simply make application of section 506 to the "rights" of the first mortgage holder unavailable. Such holder's "rights" may not be modified. ***Nobelman v. American Savings Bank***, 508 U.S. at 332, 113 S.Ct. at 2111.

More importantly, as this Court has observed in ***Knapp***, it is not surrender of collateral postconfirmation which is prohibited by sections 1327 or 1329 of the Code. What a debtor cannot do postconfirmation is, as ***Nolan*** holds, recalculate the amount of the "allowed secured claim" based upon the depreciated value of the collateral after surrender and sale of the collateral, and discharge the new deficiency amount. In this case, Debtor may surrender his home to the mortgage holder, but he cannot modify that mortgage holders rights by bifurcating its claim and seeking to discharge any deficiency in contravention of section 1328(a)(1).

Finally, the inequities that Debtor and Trustee argue will be occasioned on debtors give this Court pause. In many cases, the court's disapproval of the debtors' surrender, bifurcation and effort to discharge any resulting deficiency may force debtors to dismiss and refile their cases. That concern, however, when weighed against the statutory protections afforded secured creditors by the Code in Chapter 13, is not enough to compel a different conclusion. It is this Court's view that the Debtor's postconfirmation proposed Chapter 13 plan modifications go beyond the limits of what Congress permitted in section 1329. This Court's narrow reading of section 1329, like that of the Sixth Circuit, strikes the balance between the finality to be accorded confirmation orders as codified at section 1327 of the Code and Congress's recognition in section 1329 of the potential for changed circumstances in the lives of Chapter 13 debtors who commit to repay debts over three or five years. Accordingly, it is

ORDERED that Debtor's Motion to Reconsider is DENIED.

DATED: November 26, 2013                BY THE COURT:

                                        _____
                                        A. Bruce Campbell
                                        United States Bankruptcy Judge

---

[13] A modified plan "becomes the plan unless, after notice and a hearing, such modification is disapproved." 11 U.S.C. §1329(b)(2). Thus, until the court determines: (1) that a proposed modification meets the elements of section 1329(a); and, if it does, (2) that the proposed modification complies with sections 1322(a), 1322(b), 1323(c) and 1325(a), the modified plan does not "become the plan."